UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DEBRA WEISMAN and ALBERT
WEISMAN,

       Plaintiffs,

   v.

NEW JERSEY DEPARTMENT OF HUMAN
SERVICES et al.

       Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 11-1856
(JEI/JS)

**OPINION**

**APPEARANCES:**

FRANK FINCH, III, ESQ.
Two Penn Center, Suite 1850
Philadelphia, PA 19102

    and

GEOFFREY B. GOMPERS, ESQ.
778 Riverton Road
Moorestown, NJ 08057
    Counsel for Plaintiffs

ATTORNEY GENERAL OF NEW JERSEY
By: Jacqueline Augustine, Esq.
Richard J. Hughes Justice Complex
P.O. Box 112
25 Market Street
Trenton, NJ 08625-0112
    Counsel for Defendants

**IRENAS,** Senior District Judge:

Plaintiffs Debra Weisman ("Weisman") and her husband, Albert

Weisman, initiated this action for injuries allegedly suffered in

connection with the termination of Weisman's employment at Ancora

1

Psychiatric Hospital ("Ancora").[1]  Weisman alleges she was
retaliated against for making complaints about working conditions
at Ancora.[2]  Pending before the Court is Defendants' Motion to
Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and
12(b)(1).

**I.**

Weisman is a registered nurse licensed by the state of New
Jersey since 1994.  (Compl. ¶ 15.)  From June 1998 to April 2010,
Weisman was employed as a charge nurse at Ancora, a DHS-operated
facility.  (*Id.* ¶¶ 11, 16.)

Beginning in 2006, Weisman began making complaints about
what she perceived to be violations of policies, rules, and
regulations at Ancora.  (*Id.* ¶ 18.)  Specifically, Weisman
complained formally and informally about staffing shortages, co-
worker misconduct, falsification of documents, false allegations
made against Weisman, and violations of written policies to DHS
officials, Ancora officials, and to former Governor Corzine.
(*Id.* ¶¶ 19-29.)  Weisman also gave testimony adverse to Ancora at
a New Jersey Office of Administrative Law proceeding, and gave a

---

[1]  The Court exercises subject matter jurisdiction pursuant
to 28 U.S.C. § 1331 and § 1367.

[2]  Named as Defendants in this action are the New Jersey
Department of Human Services ("DHS"); Ancora; Commissioner of
DHS, Jennifer Velez; Executive Director and Chief Operating
Officer of Ancora ("COO"), Allan Boyer; and Director of Human
Resources at Ancora, Alfred Filippini (collectively
"Defendants").

statement regarding alleged staffing shortages and document
falsification to the United States Department of Justice in
connection with an investigation into alleged civil rights
violations.  (*Id.* ¶¶ 18, 38-45, 46-54.)  In addition, Weisman
gave an interview to the Asbury Park Press about conditions at
Ancora, which was published in an article titled "Nurse alleges
litany of abuses at troubled hospital" on February 17, 2008.
(*Id.* ¶ 29.)

Weisman alleges that because of her complaints, Ancora and
DHS officials attempted to discredit her through false
allegations of misconduct, baseless disciplinary actions
culminating in her eventual termination, false reports to the New
Jersey Board of Nursing, and defamatory accusations regarding her
mental state.  (*Id.* ¶¶ 55, 58-61, 72-74, 88-90, 56-71.)  As a
result of the alleged retaliatory actions, Weisman took a leave
of absence beginning on September 30, 2008 because she was
suffering post-traumatic stress disorder. (*Id.* ¶ 62; *see also id.*
Ex. A.)

Weisman's physician approved her to return to work beginning
on June 26, 2009.  (*Id.* ¶ 66.)  A fitness-for-duty independent
medical evaluation was a condition of Weisman's return to duty.
(*Id.* ¶ 67.)  Weisman submitted to the evaluation, and the
psychiatrist found her unfit to return to work.  (*Id.* ¶ 71.)
According to Weisman, the psychiatrist's findings were influenced

by false allegations about her conduct made before Weisman even met with the psychiatrist.[3] (*Id.* ¶¶ 68-70.)

Weisman was not permitted to return to work and instead was suspended pending termination. (*Id.* ¶¶ 72-73.) On July 30, 2009, she was given a Preliminary Notice of Disciplinary Action for "insubordination, inability to perform one's duty, violation of policy, and conduct unbecoming a public employee." (*Id.* ¶ 73.)

On January 28, 2010, following a departmental hearing on December 7, 2009, Defendants served Weisman with a "Final Notice of Major Disciplinary Action" ("Final Notice"), terminating her employment at Ancora effective November 12, 2009. (*Id.* ¶ 74.) The following charges were sustained against Weisman: "Insubordination, Inability to Perform Duties, Conduct Unbecoming a Public Employee, Other Sufficient Cause, Inability to Discharge One's Duty Due to Mental or Physical Capacity, Notoriously Disgraceful Conduct, and Violation of Rule, Regulation, Policy, Procedure, Order or Administrative Decision." (*Id.*)

With the help of her union, Weisman appealed her termination and sought arbitration. (*Id.* ¶ 75.) Prior to arbitration, the parties reached an agreement through a mediation proceeding that

---

[3] According to the Complaint, "[b]y letter dated July 10, 2009 from Rudene L. Vaught, Assistant Commissioner for Human Resources at Defendant DHS, a significant amount of false and misleading 'background' information about Weisman was submitted to Dr. Margolis." (Compl. ¶ 69.)

4

took place on April 16, 2010.  (*Id.* ¶ 76.)  The agreement
provided that in exchange for Weisman's waiver of all related
claims against the State and its agents, her status on the Final
Notice would be changed from "removal" to "resignation in good
standing."  (*Id.* ¶ 78; *see also id.* Ex. E.)  The settlement
agreement was signed on April 16, 2010 by Weisman, employer
representative Phoebe Askie, Weisman's union representatives, and
the mediator. (*Id.*)

However, in contravention of the settlement agreement, the
Final Notice was changed to read "resignation not in good
standing" as opposed to "resignation in good standing."  (*Id.* Ex.
E.)  According to the Complaint, Defendant Filippini
intentionally failed to make the agreed upon change to the Final
Notice, and Defendant Boyer was complicit in this action in order
to retaliate against Weisman.  (*Id.* ¶¶ 141-42.)

On June 7, 2010, Kennedy Memorial Hospitals ("Kennedy") sent
Weisman a letter notifying her that she had been preliminarily
accepted as a nurse, contingent upon receipt of satisfactory
references.  (*Id.* Ex. F.)  On June 17, 2010, Kennedy informed
Weisman that they had not received satisfactory references and
rescinded the offer of employment.  (*Id.* Ex. G.)  According to
Weisman, the reason she was not hired by Kennedy was because
Defendant Filippini, or a representative of his office acting on
his instruction, informed Kennedy that Weisman had resigned "not

5

in good standing" and that Filippini made defamatory statements
regarding Weisman's employment at Ancora.  (*Id.* ¶¶ 82-83.)

Weisman filed suit in this Court on March 31, 2011,
asserting civil rights violations pursuant to 42 U.S.C. § 1983 as
well as various state law claims.[4]  On June 15, 2011, Defendants
filed the instant Motion to Dismiss the Complaint.

## II.

## A.

Federal Rule of Civil Procedure 12(b)(6) provides that a
court may dismiss a complaint "for failure to state a claim upon
which relief can be granted."  In order to survive a motion to
dismiss, a complaint must allege facts that raise a right to
relief above the speculative level.  *Bell Atlantic Corp. v.
Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P.
8(a)(2).

While a court must accept as true all allegations in the
plaintiff's complaint, and view them in the light most favorable
to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224,
231 (3d Cir. 2008), a court is not required to accept sweeping
legal conclusions cast in the form of factual allegations,
unwarranted inferences, or unsupported conclusions.  *Morse v.
Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The

---

[4]  In addition, Weisman's husband, Albert, asserts a loss of
consortium claim.

6

complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible.  *Phillips*, 515 F.3d at 234.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

When evaluating a Rule 12(b)(6) motion to dismiss, the Court considers "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  A document that forms the basis of a claim is one that is "integral to or explicitly relied upon in the complaint."  *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

**B.**

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for lack of subject matter jurisdiction.  Rule 12(b)(1) motions may be based upon the complaint's face or its underlying facts.  *Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977).

"A facial attack questions the sufficiency of the pleading, and in reviewing a facial attack, a trial court accepts the

7

allegations in the complaint as true." *Pittman v. Metuchen Police Dept.*, No. 08-2373, 2009 WL 3207854, *1 (D.N.J. Sept. 29, 2009).

A factual attack permits the court to consider conflicting evidence that may bear on its jurisdiction. *Id.* "No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet Group Int'l v. Oriental Rug Importers Ass'n Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### III.

### A.

Defendants argue that Plaintiffs' claims are precluded by the settlement agreement reached between the parties. Pursuant to the settlement agreement, Defendants agreed to change "removal" to "resignation in good standing" on the Final Notice in exchange for Weisman's waiver of "all appeals, claims, demands, damages, causes of action or suits . . . which he/she may have against the State, its employees, agents, or assigns arising out of or related to the subject matter of this disciplinary action . . . ." (Compl. Ex. E.)

Plaintiffs argue that the April 16, 2010 settlement agreement cannot be enforced against them because they were

8

deprived of the benefit of their bargain when Defendants breached the agreement by designating Weisman's resignation as "*not* in good standing" on the Final Notice.   Defendants do not dispute that they made an error on the May 2010 Final Notice; however, they argue that it was a "minor mistake," a mere "clerical error" which was corrected on January 4, 2011.   (Defs' Br. at 13.)

A release of claims pursuant to a settlement agreement is a simple legal contract which should be enforced to preclude a lawsuit stemming from the related events provided there is no applicable exception to the release defense.   *Grimes v. Vitalink Commc'n Corp.*, 17 F.3d 1553, 1557 (3d Cir. 1994).   However, "a material breach by either party to a bilateral contract excuses the other party from rendering any further contractual performance."   *Magnet Res., Inc. v. Summit MRI, Inc.,* 318 N.J. Super. 275, 285 (App. Div. 1998)(citing *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990)).   A material breach is one that "goes to the essence of a contract."   *Goldman S. Brunswick Partners v. Stern*, 265 N.J.Super. 489, 494 (App. Div. 1993)(quoting *Ross Sys. v. Linden Dari-Delite, Inc.*, 35 N.J. 329, 341 (1961)).

Defendants' sole obligation under the settlement agreement was to designate Weisman's status on the Final Notice as "resignation in good standing."   Defendants did not do this until January 2011, seven months after the Final Notice reading "resignation *not* in good standing" was allegedly sent to Kennedy,

9

resulting in the revocation of an offer of employment to Weisman.[5]  (*See* Augustine Cert. Ex. 2, Final Notice dated May 11, 2010; Compl. Ex. G.)(emphasis added).

Because Defendants have materially breached the settlement agreement and deprived Weisman of the benefit of her bargain, Weisman is excused from performance of her obligation under the agreement to release all claims related to the disciplinary action.  *See In re Nickels Midway Pier, LLC,* 372 B.R. 218, 222-23 (D.N.J. 2007).  Accordingly, Defendants' Motion to Dismiss Plaintiffs' claims as barred by the settlement agreement will be denied.

**B.**

In Count II of the Complaint, Weisman alleges that she was retaliated against in violation of the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997d, which provides: "[n]o person reporting conditions which may constitute a violation under this subchapter shall be subjected to retaliation in any manner for so reporting."  42 U.S.C. § 1997d.

Defendants move to dismiss this Count, arguing that CRIPA does not provide for a private cause of action.  (Defs' Br. at

---

[5]  The fact that the breach may have been due to a "mere clerical error" does not diminish or excuse the material breach of the agreement.  Regardless of the reason why Defendants did not comply with their sole obligation under the settlement agreement, their failure to perform nevertheless constitutes a material breach.

14-15.)  Plaintiffs concede that no court construing the anti-retaliation provision of CRIPA has found it to create or imply a private cause of action, but they nevertheless argue that in the absence of Third Circuit precedent on the issue, this Court should imply a private right of action under the analysis set out by the Supreme Court in *Cort v. Ash*, 422 U.S. 66 (1975).[6]

As an initial matter, the Court notes that while not expressly overruled, the *Cort* framework has been significantly altered and "effectively overruled" by later Supreme Court decisions.  *Thompson v. Thompson*, 484 U.S. 174, 188 (1988)(Scalia, J., concurring); *see also Alexander v. Sandoval*, 532 U.S. 275 (2001).  Following these later Supreme Court decisions, the touchstone for determining whether a private right of action exists is Congressional intent to create a personal right and a private remedy.  *See McGovern v. City of Philadelphia*, 554 F.3d 114, 119 (3d Cir. 2009)*; Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007).

Although the Third Circuit has not addressed this issue, each court to consider whether §1997(d) grants a private right of

---

[6]  The *Cort* analysis requires a court to consider (1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether there is evidence of congressional intent to create a remedy or deny one; (3) whether creating a remedy for the plaintiff would be consistent with the legislative scheme; and (4) whether the cause of action is one traditionally related to state law so that creation of a cause of action under federal law might be inappropriate.  422 U.S. at 78.

11

action for an individual has found that it does not. *See Pope v. Bernard*, 2011 WL 478055 at *1 (1st Cir. Feb. 10, 2011); *Price v. Brittain*, 874 F.2d 252, 262 (5th Cir. 1989); *McRorie v. Shimoda*, 795 F.2d 780, 782 n.3 (9th Cir. 1986); *Bieros v. Nicola*, 860 F.Supp. 226, 235 (E.D.Pa. 1994). Of particular relevance to the instant action is the Fifth Circuit's analysis of legislative intent in *Price v. Brittain*. The Fifth Circuit found that those committed to mental health institutions were the protected class under CRIPA and that there was no indication that Congress sought to create a private cause of action for employees at such institutions. *Price*, 874 F.2d at 263.

In light of the persuasive analysis of legislative intent by the courts to have considered the issue, this Court agrees that no private cause of action exists for an employee of a mental health institution under 42 U.S.C. § 1997d. Accordingly, Defendants' Motion to Dismiss Count II of the Complaint will be granted.

## C.

Defendants next argue that the Complaint has not set forth a sufficient factual basis to maintain any claims, including claims pursuant to § 1983, against Defendants Velez and Boyer. (Defs' Reply at 14-15.)

With respect to § 1983 claims, "[a] defendant in a civil rights action must have personal involvement in the alleged

12

wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Allegations of personal involvement or actual knowledge and acquiescence made with appropriate particularity will suffice.  *Id.*  The Third Circuit has held that a civil rights complaint stating the conduct, time, place, and persons responsible is adequate.  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980)).

The only allegation made against Defendant Velez is that, "acting through Donald Mangus, Director of the DHS Office of Cooperative Labor relations," she notified Weisman that her grievance could not be processed because she had resigned her employment with DHS.  (Compl. ¶ 84.)  This allegation is insufficient to sustain a § 1983 claim against Defendant Velez for retaliation against Weisman for the exercise of her First Amendment rights.  The Complaint does not include any allegations of Defendant Velez's personal involvement or actual knowledge and acquiescence in the alleged wrongs forming the basis of Weisman's § 1983 claims.  Moreover, the instances of retaliation are alleged to have been done by Ancora management, and while Ancora is a DHS-operated facility, it is nevertheless a separate entity maintaining a separate place of business.  The Complaint fails to allege any facts that, if proven, would show Defendant Velez's

personal involvement in the alleged acts of retaliation against Weisman.  As such, the Complaint fails to meet the Third Circuit's standard for a legally adequate civil rights complaint. *See Evancho v. Fisher*, 423 F.3d 347, 353-54 (3d Cir. 2005).

In addition, this allegation is wholly unrelated to and therefore insufficient to sustain the state law claims asserted against Defendant Velez, which include tortious interference, defamation, intentional infliction of emotional distress, breach of contract, breach of implied covenant of good faith and fair dealing, a claim pursuant to the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.*, and Albert Weisman's loss of consortium claim.

With respect to Defendant Boyer, the Complaint alleges that Weisman made complaints about the working conditions at Ancora via telephone messages to Defendant Boyer.  (Compl. ¶ 19.)  In addition, the Complaint alleges that Boyer, "acting through Maureen Long, RN, DHS' Director of Nurses," informed the New Jersey Board of Nursing that Weisman was suspended pending termination and that, as a result, Weisman was "ordered to appear before the N.J. Board of Nursing to give evidence and testimony in response to the allegations Ancora made to the Board." (*Id.* ¶¶ 88, 90.)

These allegations connect Defendant Boyer directly to the alleged protected conduct of Weisman's complaints about the

14

conditions at Ancora as well as the retaliatory conduct, which includes making an allegedly false report to the Board of Nursing.  (*See* Compl. ¶ 55(d).)   Thus, at this stage of the litigation, Weisman has alleged sufficient facts against Defendant Boyer to sustain the claims against him.

Accordingly, Defendants' Motion to Dismiss will be granted as to Defendant Velez but denied as to Defendant Boyer.[7]

**D.**

In Count I, Weisman asserts claims under 42 U.S.C. § 1983 for the violation of her First Amendment right to freedom of speech for the alleged retaliation she suffered after speaking out about conditions at Ancora.[8]   Defendants move to dismiss Plaintiffs' constitutional claims, arguing that Defendants are

---

[7]   Because Plaintiffs' claim pursuant to 42 U.S.C. § 1983 remains viable as against Defendants Boyer and Fillipini, this Court has not dismissed all claims over which it has original jurisdiction.   Therefore, Defendants' Motion to Dismiss the state law claims for lack of subject matter jurisdiction will be denied.

[8]   42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

15

not "persons" within the meaning of § 1983.

The Supreme Court has held that states and its departments are not persons within the meaning of § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 70 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."). While state officials sued in their official capacity are also not "persons" subject to a suit for damages under § 1983, an official capacity suit against a state official seeking prospective injunctive relief is not treated as an action against the State. *Id.* at 71 n.10; *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). However, a state official sued in his individual capacity is a "person" subject to suit under § 1983. *Kentucky v. Graham*, 473 U.S. at 167-68.

Plaintiffs' § 1983 claims are asserted against DHS; Ancora, a DHS-operated facility; Allan Boyer in his individual capacity and in his official capacity as COO of Ancora; and Alfred Fillipini in his individual capacity and in his official capacity as Director of Human Resources at Ancora.[9] Based on the clearly

_____

[9] Defendants argue that because Filippini and Boyer were acting in their official capacities at all times relevant to the action, Weisman cannot maintain an individual capacity § 1983 claim against them. (Defs.' Br. at 18.) However, the fact that Filippini and Boyer were acting as state officials at the time of the alleged violations does not insulate them from an individual capacity suit under § 1983. *Melo v. Hafer,* 912 F.2d 628, 637 (3d

established case law, Defendants DHS and Ancora as arms of the
state are not "persons" within the meaning of § 1983.  Therefore,
Weisman cannot maintain § 1983 claims against these state
agencies.[10]

However, in accordance with the above-stated principles,
Weisman may seek prospective injunctive relief against state
officials Boyer and Fillipini in their official capacities, and
retrospective relief against Boyer and Fillipini in their
individual capacities.[11]

---

Cir. 1990)(rejecting the argument that a "state official can be
sued in her personal capacity only if the allegedly
unconstitutional actions were not taken in her official
capacity").

[10]   In their Reply Brief, Defendants also argue that the §
1983 claim against them is barred by the Eleventh Amendment.
Defendants are correct that Plaintiffs' constitutional claims
against DHS and Ancora are also barred by the Eleventh Amendment
under which "[s]tate governments and their subsidiary units are
immune from suit in federal court." *Betts v. New Castle Youth
Development Center*, 621 F.3d 249, 253 (3d Cir. 2010).  However,
the Eleventh Amendment does not bar suits against state officials
in their individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 31
(1991).

[11]   Weisman seeks reinstatement to her position, a letter of
recommendation, and expungement of her personnel files, which are
plainly prospective injunctive relief that may be sought in a §
1983 action against state officials sued in their official
capacity. *Melo v. Hafer,* 912 F.2d 628, 635-36 (3d Cir. 1990).
Weisman also seeks back pay, which she argues is permissible
injunctive relief because it represents "restoration of withheld
wages, benefits, etc., as distinguished from 'damages. . . .'"
(Pls' Opp. at 25.)  The Third Circuit has made clear that while
back pay is injunctive in nature, it constitutes impermissible
retrospective relief for the purposes of an official capacity §
1983 suit. *Iles v. De Jongh*, 638 F.3d 169, 177-78 (3d Cir.
2011).  Thus, Weisman may only seek back pay against Boyer and

Accordingly, Defendants' Motion to Dismiss the § 1983 claims will be granted with respect to (1) all claims against DHS and Ancora, and (2) claims for money damages, including back pay, against Defendants Boyer and Fillipini in their official capacities.  The Motion will be denied with respect to (1) injunctive relief against Defendants Boyer and Fillipini in their official capacity and (2) all claims against them in their individual capacity.

## IV.

For the reasons stated above, Defendants' Motion to Dismiss will be granted as to Plaintiffs' CRIPA claim stated in Count Two and all claims against Defendant Velez.  Defendants' Motion to Dismiss the § 1983 claims will also be granted with respect to (1) all claims against DHS and Ancora, and (2) claims for money damages, including back pay, against Defendants Boyer and Fillipini in their official capacities.  Defendants' Motion will be denied with respect to (1) prospective injunctive relief against Defendants Boyer and Fillipini in their official capacity and (2) all claims against them in their individual capacity.  An appropriate Order accompanies this Opinion.

Dated: October 5, 2011

    s/Joseph E. Irenas
    **JOSEPH E. IRENAS, S.U.S.D.J.**

———————————————

Fillipini in their individual capacities.

18