DEBRA WEISMAN and ALBERT
WEISMAN,

     Plaintiffs,

  v.

NEW JERSEY DEPARTMENT OF HUMAN
SERVICES, et al.,

     Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 11-1856
(JEI/JS)

**OPINION**

**APPEARANCES:**

GEOFFREY B. GOMPERS & ASSOCIATES
By:  Frank Finch III, Esq.
Two Penn Center Plaza, Suite 1850
Philadelphia, Pennsylvania 19102
    Counsel for Plaintiffs.

ATTORNEY GENERAL OF NEW JERSEY
By:  Noreen P. Kemether, Esq.
Richard J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625
    Counsel for Defendants.


**Irenas**, Senior District Judge:

    Plaintiffs Debra Weisman ("Weisman") and her husband,

Albert Weisman, initiated this civil suit for injuries allegedly

sustained in connection with the termination of her employment

at Ancora Psychiatric Hospital ("Ancora").[1]  Weisman asserts that

---

[1] The Court exercises subject-matter jurisdiction pursuant to 28 U.S.C. § 1331
and § 1367.

she was retaliated against for making complaints about working conditions at Ancora.[2]  Pending before the Court are Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment.  For the reasons set forth below, the Plaintiffs' Motion will be denied and the Defendants' Motion will be granted.

## I.

Weisman is a registered nurse, licensed by the State of New Jersey, and between June 1998 and April 2010 was employed as a charge nurse at Ancora.  *Weisman v. NJ Dept. of Human Svcs.*, 817 F.Supp.2d 456, 458 (D.N.J. 2011).  The Court reviews only those facts relevant to deciding the instant motions.

Beginning in 2006, Weisman began making complaints regarding staffing shortages and other violations of various policies at Ancora.  (Compl. ¶ 19; Defs. Mot. Ex. C at 34:10-19.)  Initially, these complaints consisted of informing her supervisors and filling out forms indicating that staffing shortages had occurred.  (Defs. Mot. Ex. C at 34-37.)  Eventually, Weisman elevated these concerns to Ancora management by telephone and at community-wide meetings.  (*Id.* at 44-45.)

---

[2] Named as Defendants in this action are the New Jersey Department of Human Services ("DHS"); Ancora; Commissioner of DHS, Jennifer Velez (dismissed from this case in *Weisman v. NJ Dept. of Human Svcs.*, 817 F.Supp.2d 456, 463 (D.N.J. 2011)); Chief Executive Officer of Ancora, Allan Boyer; and Director of Human Resources at Ancora, Alfred Filippini (collectively, "Defendants").

Through June of 2008, Weisman continued to escalate her complaints at Ancora, providing testimony adverse to Ancora at a New Jersey Office of Administrative Law proceeding, writing letters to DHS officials, and participating in a Department of Justice investigation. (Pls. Opp. Ex. F; Defs. Mot. Ex. K; Compl. Ex. C.)

Beginning on September 30, 2008, Weisman took a leave of absence from her position at Ancora as a result of a diagnosed panic disorder. (Defs. Mot. Ex. I at 1-2.) During the course of her leave, Weisman telephoned her superiors at Ancora, including Defendants Boyer and Filippini, on a number of occasions. (*See*, *e.g.*, Defs. Mot. Ex. E; Defs. Mot. Ex. EE at 3.) The calls were not simply related to complaints regarding patient care at Ancora; for example, in March of 2009, Weisman made a number of disturbing comments on voicemails left at all hours of the night, including references to taking "a fist full of drugs." (Defs. Mot. Ex. E at APH00490). In July, she left a voicemail for Boyer, calling him the "skinny guy, polyester suit guy." (Defs. Mot. Ex. E at APH00501.) Though Weisman disputes the contents of some transcriptions, she does not dispute that she called Boyer "greasy hair[ed]," or that she referred to him as the "polyester suit guy." (Defs. Mot. Ex. C at 88:17-24.) In her deposition, Weisman also noted that while she did not phone in a bomb threat to Ancora during her leave of absence,

she did in fact call the patient ward one day to ask how the staff would respond to an emergency like a bomb threat. (Defs. Mot. Ex. C at 83:16-18.)

As the end of Weisman's leave of absence approached, Filippini wrote to Weisman on June 12, 2009 following a conversation between the two of them. (Defs. Mot. Ex. L.) Filippini informed Weisman that in addition to her doctor's permission to return to work, Weisman would also have to undergo a fitness-for-duty evaluation. (*Id.*) Weisman's physician cleared her to return to work at Ancora on June 26, 2009, and Weisman underwent a fitness-for-duty evaluation by Dr. Gerald Margolis on July 13, 2009. (Pls. Opp. Ex. I; Defs. Mot. Ex. M at 1.) Margolis reported that Weisman was unfit to return to Ancora as a result of a delusional disorder, concluding that her return "would be harmful to patients under her care." (Defs. Mot. Ex. M at 4-5.) Following this examination, Weisman never returned to work at Ancora.

On November 20, 2009, Maureen Long, Director of Nurses at Ancora, reported Weisman's suspension pending termination to the New Jersey Board of Nursing. (Defs. Mot. Ex. R at 1.) Long's letter explained that during Weisman's suspension, Weisman trespassed on the patient ward at Ancora, made a number of

"inappropriate" and "disrespectful" phone calls, and failed a fitness-for-duty evaluation.[3] (*Id.* at 1-2.)

On January 28, 2010, Weisman received a Final Notice of Major Disciplinary Action, indicating that Weisman would be terminated effective November 12, 2009 as a result of eight charges.[4] (Defs. Mot. Ex. B.) Following this notice, Long filed a second letter with the New Jersey Board of Nursing on March 30, 2010, in which she provided a copy of the November 20, 2009 letter and also enclosed a Health Care Professional Responsibility and Reporting Enhancement Act Reporting Form that indicated Weisman was "Discharged from the staff" on January 28,

---

[3] Weisman suggests that the allegations contained in the report to the New Jersey Board of Nursing were "manufactured" and were used to "cause Weisman to lose her job at Kennedy." (Pls. Opp. Br. at 48.) However, the record demonstrates that, as detailed in the report, Weisman did telephone Boyer in March, 2009, and in her own words, characterized Boyer in the following manner: "I said, I've been told that you wear – that you're skinny, that you wear polyester suits, and you have greasy hair. I never said rosy hair. I said greasy hair." (Defs. Mot. Ex. C at 88:17-24.) As described in the report, "Ms. Weisman has called the CEO of Ancora Psychiatric Hospital . . . . and referred to him in a disrespectful manner. The nature of these telephone calls was highly inappropriate and disconcerting; many of the calls exhibited anger and rudeness." (Defs. Mot. Ex. CC.) The report also alleged that Weisman failed a fitness-for-duty evaluation, which is demonstrated by the report of Dr. Margolis. Finally, while Weisman disputes the details of an incident on August 24, 2009 where (during her leave) she taped her paycheck to her locker and was escorted out of Ancora by police, she explained at her deposition that she went to Ancora on that date and left a copy of her paycheck on the desk at the nurse's station with a note indicating that she was fired. (Defs. Mot. Ex. C at 156:8-21.) When asked whether she was escorted off Ancora property by police after doing that, she responded: "I sure was, yes." (*Id.* at 156:21.)

[4] The charges included insubordination, inability to perform duties, conduct unbecoming a public employee, inability to discharge one's duty due to mental or physical incapacity, an additional administrative charge of insubordination and notoriously disgraceful conduct, violation of a rule, and other sufficient cause. (Defs. Mot. Ex. B.)

2010. (Defs. Opp. Ex. 1.)  On March 31, 2010, Long sent a copy
of the two letters to Weisman, which Weisman received on April
2, 2010 according to her signature on a United States Postal
Service Receipt.  (*Id.* at 7.)

Weisman appealed her termination and sought arbitration
through her union, which resulted in a settlement agreement on
April 16, 2010.  (Defs. Mot. Ex. W.)  In exchange for a waiver
of all claims against the state and its agents, Weisman's
termination would be changed from "removal" to "resignation in
good standing."  (*Id.* at 1.)

As previously detailed in this litigation, the subsequent
Final Notice of Major Disciplinary Action, dated May 11, 2010,
indicated that Weisman's termination was a "resignation not in
good standing" in contravention of the settlement agreement.
(Defs. Mot. Ex. X.)  On January 4, 2011, Filippini signed a new
Final Notice of Major Disciplinary Action with the designation
"resignation in good standing," finally bringing Weisman's
termination in compliance with the terms of the settlement
agreement.  (Defs. Mot. Ex. Z.)

On June 7, 2010, Kennedy Memorial Hospitals ("Kennedy")
offered Weisman a position as a part time Registered Nurse.
(Defs. Mot. Ex. AA at 1.)  Ten days later, Kennedy rescinded
Weisman's position as a result of receiving unsatisfactory job
references.  (*Id.* at 2.)  Specifically, a background

investigation performed by Tabb, Inc. demonstrated that Weisman had voluntarily resigned from her position at Ancora, but that Ancora checked the box that Weisman had been reported to the New Jersey Board of Nursing in the past seven years, pursuant to N.J.S.A. 26:2H-12.2c. (Defs. Ex. CC.)

Weisman and her husband filed suit in this Court on March 31, 2011, asserting civil rights violations pursuant to 42 U.S.C. § 1983 and various state law claims. On February 15, 2013, Weisman moved for summary judgment in her favor on her claim for breach of contract stemming from the Defendants' failure to comply with the April 16, 2010 settlement agreement. On the same date, the Defendants moved for summary judgment in their favor on each of the Plaintiffs' remaining claims.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986).  A fact is material only if it will affect
the outcome of a lawsuit under the applicable law, and a dispute
of a material fact is genuine if the evidence is such that a
reasonable fact finder could return a verdict for the nonmoving
party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 249, 252
(1986).  The non-moving party must present "more than a
scintilla of evidence showing that there is a genuine issue for
trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d
Cir. 2005).  The court's role in deciding the merits of a
summary judgment motion is to determine whether there is a
genuine issue for trial, not to determine the credibility of the
evidence or the truth of the matter.  *Anderson*, 477 U.S. at 249.

### III.

The Plaintiffs move for summary judgment in their favor on
Count VIII, which alleges a breach of contract, and as to the
Defendants' twenty-fifth affirmative defense, which concerns the
Defendants' obligations under N.J.S.A. 26:2H-12.2c.  In
response, the Defendants move for summary judgment in their
favor on all remaining counts, arguing, among other things, that
all of the remaining counts are precluded by the broad release
contained in the April 16, 2010 settlement agreement.  The Court
addresses each motion in turn.

**A.**

Plaintiffs argue they are entitled to summary judgment on their claim of breach of contract because the Defendants have failed to comply with the settlement agreement of April 16, 2010. (Pls. Mot. Br. at 15.) The Court previously addressed this claim in its Opinion issued after considering the Defendants' Motion to Dismiss, holding that dismissal of the breach of contract claim was not warranted for failure to state a claim. *See Weisman v. N.J. Dept. of Human Svcs.*, 817 F.Supp.2d 456, 461 (D.N.J. 2011). With the benefit of discovery, the Plaintiffs now argue they are entitled to summary judgment because the settlement agreement was supposed to reflect that Weisman's termination was a "resignation in good standing" immediately after it was signed, but instead it reflected "resignation not in good standing" for a period of seven months before the Defendants corrected Weisman's personnel file. (Pls. Mot. Br. at 11-12.) On the other hand, the Defendants argue that the Plaintiffs are not entitled to summary judgment because Weisman's subsequent employer never received word of the erroneous designation, therefore the Defendants never materially breached the agreement and the Plaintiffs' motion must fail. (Defs. Opp. Br. at 16.)

A release of claims pursuant to a settlement agreement is a legal contract that should be enforced "to preclude a lawsuit

stemming from the related events provided there is no applicable exception to the release defense." *Weisman*, 817 F.Supp.2d at 461 (citing *Grimes v. Vitalink Commc'n Corp.*, 17 F.3d 1553, 1557 (3d Cir. 1994)). A material breach to a bilateral contract excuses the other party from performing its future obligations under that contract. *Magnet Res., Inc. v. Summit MRI, Inc.*, 723 A.2d 976, 981 (N.J. Super. Ct. App. Div. 1998) (citing *Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990)). To determine whether a material breach has occurred, a "court should evaluate the ratio quantitatively which the breach bears to the contract as a whole, and secondly the degree of probability or improbability that such a breach will be repeated." *Magnet Res.*, 732 A.2d at 981 (internal quotation marks omitted) (quoting *Medivox Prods., Inc. v. Hoffmann-La Roche, Inc.*, 256 A.2d 803, 809 (N.J. Super. Ct. Law. Div. 1969)).

Under the April 16, 2010 settlement agreement, the sole obligation of the Defendants was to reflect Weisman's termination as a "resignation in good standing." (Pls. Ex. B at 2.) On May 11, 2010, Filippini signed a Final Notice of Major Disciplinary Action, inaccurately indicating that Weisman's termination was a "resignation not in good standing." (Pls. Ex. C.) The Defendants do not dispute that this disposition was in error; in his deposition, Filippini described the "resignation not in good standing" designation as erroneous because it was

not in accordance with the terms of the settlement agreement. (Pls. Ex. I at 66.) The Defendants corrected this error when it was brought to their attention on January 4, 2011 by reissuing a Final Notice of Major Disciplinary Action, which properly reflected that Weisman's penalty was amended to "RIGS [resignation in good standing]." (Pls. Ex. I at 68; Pls. Ex. D.)

In light of this error, the incorrect designation over the course of seven months fails to constitute a material breach of the settlement agreement. The actual terms of Weisman's resignation was never shared with her subsequent employer. Debra Boos, the human resources generalist responsible for hiring Weisman at Kennedy, never spoke with anyone from Ancora regarding Weisman, nor did she receive records from Ancora regarding Weisman's employment there. (Pls. Ex. J at 28-29.) Boos withdrew Kennedy's offer of employment to Weisman after receiving the background investigation that Kennedy required. (*Id.* at 44.) This background investigation, dated June 9, 2010, indicated that Weisman's resignation from Ancora was classified as a "voluntary resignation." (Pls. Ex. M at 2.) This comports with the Defendants' obligation to show Weisman's resignation in good standing under the settlement agreement.[5]

---

[5] The Plaintiffs argue that the Defendants have materially breached the terms of the settlement agreement by failing to revoke the November 20, 2009 letter

Given the Defendants' compliance with their obligation under the settlement agreement, the Plaintiffs cannot demonstrate that they are entitled to summary judgment on their breach of contract claim.

## B.

The Defendants' Motion for Summary Judgment, relying upon the release included in the parties' settlement agreement, raises basic issues of New Jersey contract law. If the Defendants breached the settlement agreement, the Plaintiffs are entitled to Summary Judgment on their breach of contract claim and the Court must address the Plaintiffs' other remaining claims to rule on the Defendants' Motion for Summary Judgment. On the other hand, if the Defendants have complied with their obligation under the settlement agreement, Weisman is also obligated to comply with her obligation under the settlement agreement; namely, that she released all the Defendants from liability for all claims arising before April 16, 2010.

---

sent to the New Jersey Board of Nursing, which indicated that Weisman had been suspended pending termination on November 12, 2009. (Pls. Mot. Br. at 16-17.) However, New Jersey law requires that health care entities, upon the request of other health care entities, truthfully disclose whether they have reported an employee to a state board of licensing regarding job performance as that performance impacts patient care. N.J.S.A. 26:2H-12.2c(a)(2). Health care entities are required to report employees to the appropriate board who have their privileges revoked or suspended, even if temporarily. N.J.S.A. 26:2H-12.2b(a)(1)(a). Filing the November 20, 2009 letter comported with New Jersey law and does not bear on the Defendants' obligation under the settlement agreement.

As explained above, a release of claims pursuant to a settlement agreement is simple legal contract, which "should be enforced to preclude a lawsuit stemming from the related events provided there is no applicable exception to the release defense." *Weisman*, 817 F.Supp.2d at 461 (citing *Grimes v. Vitalink Commc'n Corp.*, 17 F.3d 1553, 1557 (3d Cir. 2004)). Because a settlement agreement is a simple legal contract, the resolution of disputed terms would be settled by applying principles of New Jersey contract law. *Mortellite v. Novartis Crop Protection, Inc.*, 460 F.3d 483, 492 (3d Cir. 2006) (citing *Haledon v. N. Haledon*, 817 A.2d 965, 975 (N.J. Super. Ct. App. Div. 2003)).

As a preliminary matter, a contractual promise is only enforceable if the promisor gave the promise some consideration in exchange for the promise. *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 878 (N.J. 2002). The "essential requirement" of the consideration doctrine is that there is some "bargained-for exchange of promises," which could consist of an act, forbearance, or the creation, modification, or destruction of a legal relation. *Id.* (quoting *Shebar v. Sanyo Bus. Sys. Corp.*, 544 A.2d 377, 383 (N.J. 1988)). The bargained-for exchange need not be large in value; rather, "[a] very slight advantage to one party, or a trifling inconvenience to the other, is a sufficient consideration to support a contract when made by a person of

13

good capacity, who is not at the time under the influence of any fraud, imposition, or mistake." *Martindale*, 800 A.2d at 879 (alteration in original) (quoting *Traphagen's Ex'r v. Vorhees*, 12 A. 895, 901 (N.J. Eq. 1888)).

Consideration is not in doubt in the April 16, 2010 settlement agreement. The terms of the settlement agreement explicitly describe the bargained-for exchange that each party received. The settlement agreement noted that Weisman's original penalty was "Removal," and then included the following handwritten terms: "Will be modified to a resignation in good standing. Also Ms. Weisman is ban [sic] from the entire dept of Human Services, may not apply or accept future employment." (Defs. Mot. Ex. W at 1.) In addition, the pre-printed Mediation Disposition form includes the following printed terms:

> Appellant [Weisman] waives all appeals, claims, demands, damages, causes of action or suits (hereinafter referred to collectively as "Appeals/Claims") which he/she may have against the State, its employees, agents, or assigns arising out of or related to the subject matter of this disciplinary action, regardless of whether such Appeals/Claims are known or unknown, have been or could have been brought, and regardless of what forum, court or other venue could be used for such Appeals/Claims from the beginning of time to the date of this agreement. Further, Appellant waives all claims/appeals resulting from anything which has happened up until now in his/her employment with the State including but not limited to Claims/Appeals arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the New

14

> Jersey Law Against Discrimination, the
> Americans with Disabilities Act, the Equal Pay
> Act, the Conscientious Employee Protection
> Act, the Family and Medical Leave Act, the New
> Jersey Family Leave Act, the Civil Service
> Act, 42 USC 1981, 42 USC § 1983, New Jersey
> wage and hour laws, retaliation claims under
> Workers Compensation laws, but not any
> unrelated workers compensation claim for
> injury on the job, the U.S. Constitution, the
> New Jersey Constitution, tort law or contract
> law. This waiver includes all claims
> involving any continuing effects of actions or
> practices which arose prior to the date of
> this Settlement Agreement and bars the use in
> any way of any past action or practice in any
> subsequent claim.

(*Id.* at 1-2.) At the end of the settlement agreement, Weisman's signature appears along with the signatures of her local and national union representatives, a representative of DHS, and the mediator. (*Id.* at 2.) In short, in exchange for surrendering her claims against the state and accepting a ban on state employment, Weisman was granted a resignation in good standing, constituting a bargained-for exchange of promises.

Weisman argues that she would not have granted such an expansive release to the Defendants had she known that the Defendants intended to provide information regarding her termination to potential future employers, regardless of the terms of the settlement. (Pls. Mot. Br. at 19 n.7.) As the parties clarified at oral argument, Weisman believed that the settlement would mean that no future employers would know of the circumstances of her termination at Ancora, which would require

15

DHS to amend or withdraw Maureen Long's November 20, 2009 letter

to the New Jersey Board of Nursing and Long's subsequent update

of that letter on March 30, 2010.[6]  (*Id.*)  In other words, the

essence of the present dispute at this summary judgment stage is

whether the state, in agreeing to change Weisman's status to a

resignation in good standing, had to also withdraw the

notifications that were previously sent to the New Jersey Board

of Nursing.[7]

---

[6] Health care entities,

> upon the inquiry of another health care entity, shall
> *truthfully* (1) disclose whether, within the seven years
> preceding the inquiry, it provided any notice to the
> division pursuant to [26:2H-12.2b], or to the review
> panel [Board of Nursing], as required by [26:2H-12.2a],
> with respect to the health care professional about whom
> the inquiry has been made, providing a copy of the form
> of notification and any supporting documentation that
> was provided.

N.J.S.A. 26:2H-12.2c (emphasis added).  In arguing that she understood
"resignation in good standing" to require other actions, Weisman essentially
argues that she expected the state to either disobey the law (by not
indicating Long had filed two reports with the Board of Nursing) or to
mislead Weisman's prospective employers by having the state somehow indicate
that Weisman had been reported but then omit the notification and supporting
documentation.  No language to this effect appears in the terms of the
settlement agreement, described above.  Moreover, in complying with the terms
of the settlement agreement, when Weisman applied for a position with Kennedy
and Tabb, Inc. undertook a background investigation on Kennedy's behalf,
Ancora checked the box indicating that Weisman's separation from Ancora was a
"voluntary resignation," and the Defendants also checked the box indicating
that they had reported Weisman to the Board of Nursing during the past seven
years, pursuant to N.J.S.A. 26:2H-12.2c.  (Defs. Mot. Ex. CC at APH00057.)
Such an act complied with the settlement agreement and Ancora's obligation
under N.J.S.A. 26:2H-12.2c.

[7] At oral argument, Weisman indicated that she was pursuing an appeal of the
allegations in the November 20, 2009 and March 30, 2010 letters before the
Board of Nursing in an effort to clear the allegations from the Board of
Nursing's records.  Neither party has submitted any documentation of this
ongoing appeal process, but none is necessary for purposes of determining the
rights of the parties under the settlement agreement, which is all that is
required in deciding the instant motions for summary judgment.

Under New Jersey contract law, a contract term is generally binding if "the contract has been mutually agreed upon by the parties, is supported by valid consideration, and does not violate codified standards or offend public policy." *Hoffman v. Supplements Togo Mgmt., LLC*, 18 A.3d 210, 216 (N.J. Super. Ct. App. Div. 2011) (citing *W. Caldwell v. Caldwell*, 138 A.2d 402, 410-11 (N.J. 1958)). To have a mutual agreement, there must be a meeting of the minds, which "signifies that each party to the contract must have been fairly informed of the contract's terms before entering into the agreement." *Hoffman*, 18 A.3d at 216; *Johnson & Johnson v. Charmley Drug Co.*, 95 A.2d 391, 397 (N.J. 1953).

A party who enters into a written contract, without being induced by fraud "or imposition being practiced upon him, is conclusively presumed to understand and assert to its terms and legal effect." *Baig v. Nuclear Regulatory Comm'n*, No. 10-cv-0842 (FLW), 2013 WL 1558707, at *3 (D.N.J. April 10, 2013) (quoting *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 605 A.2d 681, 685 (N.J. 1992); *see also Raiczyk v. Ocean Cnty. Veterinary Hosp.*, 377 F.3d 266, 270 (3d Cir. 2004) ("[I]t is well settled that signing a contract creates a 'conclusive presumption that the signer read, understood, and assented to its terms.'") (quoting *Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F.Supp. 837, 842-43 (D.N.J. 1995)). While

rescission may be available in cases of unilateral mistake, such relief cannot be granted where the mistake occurs as a result of the mistaken party's own negligence.[8]  *Baig*, 2013 WL 1558707 at *3.  Thus, unless there is some mistake, fraud, duress, or other "imposition," the unambiguous terms of the settlement agreement are binding.

There is no dispute that Weisman voluntarily submitted to the arbitration process that resulted in the settlement agreement.  (*See*, *e.g.*, Compl. ¶¶ 76-78.)  Moreover, there is no dispute that Weisman signed a written contract, as the April 16, 2010 settlement agreement appears in writing.  (Defs. Mot. Ex. W at 2.)  Finally, there is no dispute that each party exchanged a bargained-for promise.  Thus, the Court looks to see if there is some ambiguity that precluded a meeting of the minds and would therefore invalidate the settlement agreement.

In looking at the terms of the settlement agreement, the Court finds no ambiguity.  The settlement agreement clearly

---

[8] Where a party seeks rescission of a contract due to unilateral mistake, four conditions must be present to grant such relief:

> (1) The mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable; (2) the matter as to which the mistake was made must relate to the material feature of the contract; (3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake, and; (4) it must be able to get relief by way of rescission without serious prejudice to the other party, except for loss of his bargain.

*Villanueva v. Amica Mut. Ins. Co.*, 864 A.2d 428, 432 (N.J. Super. Ct. App. Div. 2005).

manifests that Weisman agreed to a change in termination from "Removal" to "resignation in good standing." (Defs. Mot. Ex. W at 1.) Removal is a form of discipline, defined in N.J.A.C. 4A:2-2.2(a). Resignation in good standing is a status defined in N.J.A.C. 4A:2-6.1. The terms of the settlement agreement use the words "removal" and "resignation in good standing" in a clear and plain fashion; in other words, there is no ambiguity as to their meaning in the settlement agreement given their definition in the administrative regulations governing civil service employees. In the absence of mistake, fraud, duress, or other imposition, Weisman is bound to the release that she granted to the state under the settlement agreement.

Weisman cannot obtain rescission of the settlement agreement on a theory that she is the victim of a unilateral mistake – specifically, that she agreed to the amended designation of her termination as a resignation in good standing but did not realize that such a term would not require the state to rescind the two letters that Long wrote to the New Jersey Board of Nursing. While Weisman now disputes that she received notice of Long's letters prior to the April 16, 2010 settlement agreement, the Defendants have provided a United States Postal Service receipt signed by Weisman on April 2, 2010, approximately two weeks before the mediation session, acknowledging receipt of a March 31, 2010 letter from Long that

contained the two letters sent to the Board of Nursing. (Defs.
Opp. Ex. 1 at 7.) Moreover, there is no actual dispute
regarding Weisman's receipt of this notice, as Weisman alleged
in her complaint that she was notified of Long's two letters to
the Board of Nursing by a letter from Long dated March 31, 2010.
(Compl. ¶ 89; Compl. Ex. K.) Weisman's failure to exercise
reasonable care to review the contents of Long's notification
precludes Weisman from obtaining rescission of the settlement
agreement under the doctrine of unilateral mistake, which is
inapplicable in cases where the mistaken party was negligent.

Finally, no allegation of fraud, duress, or other
imposition is present in the undisputed facts produced in
discovery. To establish a prima facie state law claim for
fraud, Weisman would have to demonstrate "(1) a material
misrepresentation of a presently existing or past fact; (2)
knowledge or belief by [the state] of its falsity; (3) an
intention that [Weisman] rely on it; (4) reasonable reliance
thereon; and (5) resulting damages." *Port Liberte Homeowners
Ass'n v. Sardoni Const. Co.*, 924 A.2d 592, 507 (N.J. Super. Ct.
App. Div. 227) (quoting *Gennari v. Weichert Realtors*, 691 A.2d
350, 367 (N.J. 1997)).

In support of partial summary judgment in her favor on the
breach of contract claim, Weisman argues that she never would
have signed the settlement agreement had she known that the

"resignation in good standing" designation would not have revoked Long's two letters to the New Jersey Board of Nursing. (Pls. Mot. Br. at 19 n.7.) However, this argument does not constitute grounds for invalidating the unambiguous terms of the contract. Though it might be true that the Defendants never intended to grant Weisman a clean employment record (because Long's letters would remain on record with the New Jersey Board of Nursing), the terms of the settlement agreement only required the Defendants to provide Weisman with a resignation in good standing. This is an unambiguous term, defined in the New Jersey Administrative Code governing civil service employees, which Weisman counted herself among. Thus, the Defendants did not make any misrepresentation of their obligation under the contract, and therefore there are no grounds for invalidating the settlement agreement. Weisman is therefore bound by the release granted under the settlement agreement.

Because the terms of the settlement agreement grant the Defendants a release from all claims arising from Weisman's employment, the Defendants are entitled to summary judgment on Count I for a violation of her First Amendment rights, Count III for a violation of her New Jersey constitutional rights, Count IV for her claim under the New Jersey Conscientious Employee Protection Act, Count V for the state law claim of tortious interference with prospective economic advantage, Count VI for

the state law claim of defamation, Count VII for the state law claim of intentional interference of mental and emotional distress, Count VIII for the state law claim of breach of contract, and Count IX for the state law claim of breach of the implied covenant of good faith and fair dealing.

### C.

Plaintiff Albert Weisman brings Count X to recover for a loss of consortium resulting from the allegedly tortious conduct of the Defendants. A loss of consortium claim is "derivative of the injured spouse's personal injury cause of action." *Kibble v. Weeks Dredging & Const. Co.*, 735 A.2d 1142, 1149 (N.J. 1999). Where the spouse fails to allege a cognizable claim, derivative claims for loss of consortium fail. *See*, *e.g.*, *Acevedo v. Monsignor Donovan High Sch.*, 420 F.Supp.2d 337, 349 (D.N.J. 2006). Here, as a result of the broad waiver under the settlement agreement, Debra Weisman fails to allege any cognizable claim in tort, contract, or by statute. The Defendants are therefore entitled to summary judgment in their favor on Albert Weisman's derivative loss of consortium claim.

### V.

Based on the foregoing, the Court will deny Plaintiffs' Motion for Partial Summary Judgment on Count VIII, and will

grant Defendants' Motion for Summary Judgment.  The Plaintiffs'
Motion for Partial Summary Judgment on the Defendants' Twenty-
fifth Affirmative Defense is rendered moot in light of the
Defendants' Motion for Summary Judgment.  An appropriate Order
accompanies this Opinion.


Date: November 13, 2013

                                   _/s/ Joseph E. Irenas_____
                                   **Joseph E. Irenas, S.U.S.D.J.**